UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH J. KUBALA, | ) | CASE NO. 4:18CV1988 |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| RANDY SMITH, et al., | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendants. | ) | |

The above case is before the Court on a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by Defendants Trumbull County, Ohio ("Defendant Trumbull) and Trumbull County Engineer Randy Smith in his individual and official capacities ("Defendant Smith") (collectively "Defendants"). ECF Dkt. #19. Defendants move for summary judgment in their favor on all three counts of a complaint filed by Plaintiff Kenneth J. Kubala ("Plaintiff"). *Id.* For the following reasons, the Court GRANTS Defendants' motion for summary judgment and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE. *Id.*

## I.  **FACTS AND PROCEDURAL HISTORY**

On June 18, 2018, Plaintiff filed a complaint in the Trumbull County Court of Common Pleas averring that he was employed by the Office of the Trumbull County Engineer from October 11, 2011 to May 11, 2018 and during the past several years of his employment, Defendant Smith had subjected him to a sexually hostile work environment. ECF Dkt. #1-1 at $2^1$. Plaintiff alleged the following 11 specific incidents that he described as "[s]exually hostile acts" by Defendant Smith toward him:

---

[1]  Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

1

> a. Smith asked Kubala to take off his shirt in his office in front of others, including human resources director, Herb Laukhart, who was present for the majority of these comments and interactions;
>
> b. Smith encouraged Kubala to come and visit his renter, "Richard," at his rental property and clearly implied a sexual liaison;
>
> c. Smith, in a "creepy" way, without knowing if he was joking or being serious, said his wife, Angela, was at a union conference and asked Kubala to come over to keep him from being "scared;"
>
> d. Smith asked if Kubala had seen another elected official nude;
>
> e. Smith called Kubala and said his renter, "Richard," was waiting for him on a sheepskin rug;
>
> f. Smith, at a meeting, encouraged Kubala to place his "wiener" in the ear of another high-ranking Trumbull County Engineer's Office employee, who appeared to be sleeping;
>
> g. Smith, on dozens and dozens of occasions, would lick the top of his Diet Pepsi can in an uncomfortable manner while looking at Kubala for some type of reaction;
>
> h. Smith suggested that Kubala ride in a truck with the road superintendent while holding his "wiener;"
>
> i. Smith asked Kubala to see Kubala's hands and said "You have nice, soft hands." Smith asked Kubala to see his hands again three months later, Kubala said no and Smith grabbed Kubala's hand;
>
> j. While at lunch at the Buena Vista Cafe, the hostess asked Smith and Kubala "How are you doing?" and Smith replied "We're trying to find Kubala a boyfriend or girlfriend; anyone will do," and;
>
> k. On one occasion, Smith saw Kubala sitting outside the Starbucks at the Eastwood Mall with a female and said "Good to see you with a girl."

*Id.* at 3-4. Plaintiff went on to aver that Defendant Smith's described conduct "permeated Kubala's work place with sexually based intimidation, ridicule and insult. All of Smith's sexually based conduct toward Kubala was unwanted by Kubala." *Id*. at 4. Plaintiff alleged that Defendant Smith's pervasive conduct drove him from his job so that he resigned and was therefore constructively discharged from his employment. *Id.* Plaintiff further alleged that Defendant Smith's conduct caused him to sustain economic losses and emotional and psychological injuries such that he had to seek mental health treatment. *Id.*

In the second count of his complaint, Plaintiff alleged that Defendant Trumbull is liable for the sexually hostile work environment created by Defendant Smith because of Defendant Smith's position in the hierarchy of Defendant Trumbull as it knew or should have known that Defendant Smith was sexually harassing him and creating a sexually hostile work environment. ECF Dkt. #1-1 at 5. Plaintiff alleged that Defendant Trumbull County did not take any action to stop Defendant Smith from creating a sexually hostile work environment for Plaintiff and did nothing to repair or limit the damage caused by him to Plaintiff. *Id.*

In the third count of his complaint, Plaintiff alleged that Defendant Smith violated his civil rights by threatening him with job-related consequences if he participated in certain political activities and affiliated himself with certain individuals. ECF Dkt. #1-1 at 6. Plaintiff averred that these threats violated his right of freedom of speech and association under the United States and Ohio Constitutions and Defendant Trumbull knew or should have known of the threats due to Defendant Smith's place in the hierarchy of employment. *Id.* Plaintiff alleged emotional and psychological injuries for which he sought treatment from mental health professionals. *Id.* at 6-7.

In conclusion, Plaintiff requested that the Court find that Defendants violated his rights "pursuant to Ohio Revised Code ("ORC") §§ 4112.01 et seq. to be free from sexually harassing conduct and free from a sexually hostile work environment; [and] that Smith and Trumbull County, Ohio violated Kubala's constitutional rights to freedom of speech and freedom of association." ECF Dkt. #1-1 at 7.

On September 5, 2018, Defendants filed an answer to the complaint. ECF Dkt. #3. On October 26, 2018, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #6. On August 29, 2019, Defendants filed the instant motion for summary judgment. ECF Dkt. #19. Plaintiff filed a brief in opposition to the motion for summary judgment on November 1, 2019. ECF Dkt. #22. On November 12, 2019, Defendants filed a reply brief. ECF Dkt. #23.

## II. STANDARD OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides in pertinent part that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56, Advisory Committee Notes ("The standard for granting summary judgment remains unchanged" despite 2010 amendments to Rule 56). Rule 56(c) outlines the procedures for supporting or opposing a motion for summary judgment, stating that:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Rule 56(c)(3) provides that the Court need only consider cited materials in determining a motion for summary judgment, although the Court may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co..,* 475 U.S. at 587. If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed.R.Civ.P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex,* 477 U.S. at 322. A mere scintilla of evidence is not enough; the evidence must be such that a reasonable jury could find for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court may grant

4

summary judgment "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

### III. LAW AND ANALYSIS

In their motion for summary judgment, Defendants assert that they are entitled to judgment as a matter of law on all of Plaintiff's claims. ECF Dkt. #19. They contend that Plaintiff's sexual harassment claim fails as a matter of law because he cannot demonstrate a number of required elements in order to proceed with his claims and Defendant Smith is immune from liability for such a claim in his individual capacity. *Id.* at 3-13. Defendants further assert that Plaintiff's First Amendment claims also fail as a matter of law. *Id.* at 24.

#### A. SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT CLAIM

In his complaint, Plaintiff specifically requests that the Court find that Defendants have violated his rights "pursuant to Ohio Revised Code §§ 4112.01 et seq. to be free from sexually harassing conduct and free from a sexually hostile work environment." ECF Dkt. #1-1 at 7. Plaintiff also contends in his opposition brief that Defendants' recitation and reliance upon federal law rather than Ohio law is a weakness in their motion for summary judgment. ECF Dkt. #22 at 19. Plaintiff asserts that the Court must deny the motion for summary judgment when Ohio law is applied to his case. *Id*. at 22.

Title VII of The Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a workplace is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

The United States Supreme Court has also held that Title VII of the Civil Rights Act of 1964 applies to discrimination consisting of same-sex sexual harassment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78-79, 118 S.Ct. 998, 140 L.E.2d 201 (1998). While finding that male-on-male sexual harassment in the workplace "was assuredly not the principal evil

5

Congress was concerned with when it enacted Title VII," the Supreme Court noted that "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils," which includes "sexual harassment of any kind that meets the statutory requirements." *Id*. at 80. In rejecting claims that allow Title VII to include same-sex workplace harassment would transform Title VII into a general civility code in the workplace, the Court stated that it had never held that workplace harassment automatically constitutes discrimination because of sex, even between men and women, just because the words used had a sexual connotation or sexual content. *Id*. Rather, the Court held that "'the critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id.*, quoting *Harris*, 510 U.S. at 25.

The Ohio Supreme Court has held that federal case law interpreting Title VII of the Civil Rights Act of 1964 generally applies to cases involving Ohio Revised Code § 4112 violations for discrimination based upon sex. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131, 20 O.O.3d 200, 202 (1981). The Ohio Supreme Court has also held that Ohio Revised Code § 4112.02(A) prohibits sex discrimination in the workplace, including same-sex sexual harassment. *Hampel v. Food Ingredients Specialities, Inc*., 89 Ohio St.3d 169, 729 N.E.2d 726 (2000).

In order to establish a prima facie case of sexual harassment based upon a hostile work environment under Title VII, a plaintiff must show that: (1) he was a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability. *Williams v. General Motors Corp.*, 187 F.3d 553, 560-561 (6th Cir. 1999). Ohio law provides the same, with the Supreme Court of Ohio holding that in order to establish a hostile work environment sexual harassment claim, a plaintiff must show

> (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

6

729 N.E.2d at 732-733. Where a plaintiff fails to establish any one of these elements, dismissal is warranted. *Warg v. Reno*, 19 F.Supp.2d 776, 782 (N.D. Ohio 1998), citing *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 49 (6th Cir.) *cert.denied*, 519 U.S. 863, 117 S.Ct. 170, 136 L.Ed.2d 112 (1996).

In the instant case, Defendants contend that Plaintiff cannot establish that he was subjected to unwelcome sexual harassment, that the harassment was based on sex, or that the sexual harassment created a hostile work environment.[2] For the following reasons, the Court finds that Plaintiff has failed to meet his burden of establishing a genuine issue of material fact that the comments and conduct of Defendant Smith were sufficiently severe or pervasive.

A hostile work environment for Title VII and ORC 4112 purposes "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The "severe or pervasive" element "'filters out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Fry v. Wheatland Tube, LLC*., No. 18CA7, ---N.E.3d---, 2019 WL 1755686, 2019-Ohio-1453 (Ohio App. 5th Dist., Apr. 17, 2019), quoting *Faragher*, 524 U.S. at 788. In order to satisfy the severe or pervasive element, "the trier of fact, or the reviewing court, must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment." *Hampel*, 89 Ohio St.3d at 169. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 180. "Even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of

---

[2] The Court notes that Plaintiff testified in his deposition that he is not homosexual. ECF Dkt. #15-1 at 107. However, Plaintiff asserts that Defendant Smith created a hostile work environment by sexually harassing him based upon Defendant Smith's perception that Plaintiff was homosexual. ECF Dkt. #22 at 22. Plaintiff fails to establish that a hostile work environment same-sex sexual harassment claim can be made based upon such a perception.

7

such incidents may result in a Title VII violation." *Id*. at 181, quoting *Williams v. General Motors Corp*., 187 F.3d 553, 563 (6th Cir. 1999).

Plaintiff in the instant case asserts that Defendant Smith's comments and conduct show that he was interested in Plaintiff's sexuality and whether he was homosexual, which was none of his business. ECF Dkt. #22 at 18. The parties dispute whether Plaintiff can establish the "based on sex" element of a hostile work environment sexual harassment claim. He further asserts that Defendant Smith's comments and conduct satisfy both the severe and pervasive requirements as they were shocking, occurred over a number of years and in front of others, embarrassed and humiliated him, and affected him as they caused him to resign and seek medical care. *Id.* at 16-17. Plaintiff concludes that Defendant Smith's statements and conduct did not belong in the workplace, and went far beyond simple teasing and workplace banter. *Id*. at 16. He cites to *Camp v. Star Leasing Company*, No. 11AP-977, 2012 WL 3291798, 2012-Ohio-3650 (Ohio App. 10th Dist. Aug. 14, 2012), unpublished in support. *Id.*

In *Camp*, a female employee brought a hostile work environment sexual harassment claim against her employer based upon the comments and conduct of her male branch manager who was also her direct supervisor. 2012 WL 3291798, at *1. She alleged that her supervisor degraded and humiliated her during the entire time that he was her supervisor by requiring her to stop whatever she was doing, turn her chair to face him, put her hands in her lap, and look him in the eye when he spoke to her. *Id*. She further alleged that when she did not respond fast enough to this command, he would twirl her chair around and yell at her, "I want eye contact. I want eye contact. Right here. Right here. Look me in the eyes." *Id*. He would then point at her face and then at his eyes. *Id*. He also spoke very slowly to her and exaggerated the pronunciation of his words when he spoke to her. He also would try to stop Camp from speaking by putting his hand in her face and yelling "stop," and he would make sounds of disgust he made when she was speaking. *Id*. Camp also indicated that her supervisor would make her meet with female sales representatives who visited their branch as he felt it beneath him to meet with them, but he would make sexual remarks about the female representatives to her after they left. *Id*. Camp alleged that her supervisor also stopped her from going to other branches so that she could learn from

8

others, even though he would initially approve such visits, and he would assign tasks to her and then take them away and do them himself. *Id*. Camp alleged that male employees were not subjected to the treatment that she was. *Id*. Camp further alleged that her supervisor allowed male employees to bring in Playboy-type magazines to work and when she complained, he told the males to move the magazines to the men's restroom, which Camp cleaned. *Id*. at 1-2.

In reversing the trial court's grant of summary judgment for the employer on Camp's hostile work environment claim, the Ohio Tenth District Court of Appeals found that most of the instances Camp cited were sufficient to establish a hostile work environment. *Camp*, 2012 WL 3291798, at *5. In particular, the appellate court found that the supervisor's standing order that Camp stop what she was doing, face him quickly, put her hands in her lap, and give him her full attention would lead a reasonable finder of fact to determine that this showed hostility and not mere workplace interaction. *Id*. The court also found that the additional instances of the supervisor putting his hand up to her face twice a month and saying "stop" to stop her talking, the condescending way that he spoke to her on a daily basis, the sounds of disgust when she talked, and the use of profanities also would lead a reasonable person to find that all of those allegations showed hostility and not normal workplace interaction. *Id*.

When Star Leasing Company asserted that Camp could not establish pervasiveness because the incidents she alleged were "temporally diffuse[d]," the appellate court rejected this assertion. *Camp*, 2012 WL 3291798, at *6. Star Leasing Company relied upon a Fourth Circuit Court of Appeals case, *Hopkins v. Baltimore Gas and Electric Company*, 77 F.3d 745 (4th Cir. 1996), in which the court held that the conduct complained of by a male supervisor against a male employee was not sufficiently severe or pervasive to create an environment that a reasonable person would find hostile. Hopkins alleged that his supervisor had subjected him to a hostile work environment based upon sexual harassment from 1985-1993 when he was employed there. Hopkins alleged that, among other things: his supervisor had bumped into him and said, "You only do that so you can touch me;" he frequently entered the bathroom when Hopkins was in there alone and pretended to lock the door and walked toward him, staring, and saying "Ah, alone at last;" he attempted to force himself into the same revolving door as Hopkins; he

9

regularly commented on Hopkins' appearance, by saying "You look nice today" or "You have a really pretty shirt on" and turned over his tie on one occasion; he was the only one in the receiving line at Hopkins' wedding to give him a kiss; and he directed an illuminated magnifying lens over Hopkins' crotch, looked through it, and asked, "Where is it?" *Id*. at 747-748.

Citing to other cases in which it had affirmed a directed verdict and summary judgment in favor of employers, the Fourth Circuit found that the actions of the supervisor in *Hopkins* as a matter of law did not rise to the level of creating a hostile environment to state a Title VII claim. *Hopkins*, 77 F.3d at 753-755. The court found that the conduct complained of by Hopkins was "temporally diffuse, ambiguous, and often not directed specifically at him." *Id*. at 753. The court noted that the incidents about which Hopkins complained occurred intermittently over seven years, "with gaps between incidents as great as a year." *Id*. The court also found that most of the incidents complained of were "sexually neutral, or, at most, ambiguous." *Id*. The court noted that Hopkins never alleged that his supervisor made an overt sexual proposition or touched him inappropriately. *Id*. Finally, the court found that some of the complained about comments were not directly solely at Hopkins, as they were made in a group setting and not directed specifically at Hopkins. *Id*.

In rejecting the temporal diffusion assertion by the defendant in *Camp*, the court found that Camp had testified that the harassing conduct occurred daily, weekly, and monthly, and it was ongoing and continual. *Camp*, 2012 WL 3291798, at *6. The court held that, "a plaintiff's assertion that harassing acts are ongoing, commonplace, or continual is sufficient to survive summary judgment under the severe or pervasive standard." *Id*. (Citations omitted).

However, the objective standard for establishing that a hostile work environment exists is "not one easily met, with courts heeding the Supreme Court's instruction that, to be actionable under Title VII, 'conduct must be extreme to amount to a change in the terms and conditions of employment[.]'" *Kreuzer v. Ohio Dep't of Transp. Dist. 4*, No. 5:16-cv-3026, 2018 WL 3841043, at *9 (N.D. Ohio Aug. 13, 2018), unpublished, quoting *Faragher*, 524 U.S. at 788. "Fortunately or unfortunately, not all upsetting or even mean-spirited conduct in the workplace is actionable." *Easterling v. Ameristate Bancorp, Inc.*, No. 23980, 2010-Ohio-3340, 2010 WL 2802324, citing

*Harris v. Forklift Sys.*, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Construing the facts in a light most favorable to Plaintiff in the instant case, the Court finds that Plaintiff cannot show that Defendant Smith's comments and conduct, taken individually or cumulatively, were sufficient to constitute severe or pervasive behavior in order to defeat summary judgment on this claim. While the comments and conduct were crass, crude, and offensive, they do not rise to the requisite level of severity or pervasiveness in order to establish a prima facie case of hostile work environment sexual harassment.

In looking at the totality of the circumstances, the Court first reviews the frequency of Defendant Smith's comments and conduct in determining whether Plaintiff has presented a prima facie case of a hostile work environment. *Hampel*, 89 Ohio St.3d at 169. Nine of the eleven instances specified by Plaintiff in his complaint concern comments made by Defendant Smith, some of which he allegedly made on a repeated basis, such as trying to find Plaintiff a boyfriend or girlfriend. ECF Dkt. #1-1 at 3-4. The other two instances involve Defendant Smith's conduct, once when Defendant Smith touched Plaintiff's hands and told him how soft they were, implying that he masturbated on them, and "dozens and dozens of times" when Defendant Smith allegedly salaciously licked his Diet Pepsi cans while looking at Plaintiff for a reaction. Construing Plaintiff's complaint allegations in a light most favorable to him, this amounts to approximately 39 instances over Plaintiff's nearly 7-year/80-month career with Defendant Trumbull. Courts have held that comments and conduct occurring a similar amount of times or more do not meet the frequency factor. *See Burnett v. Tyco Co.*, 203 F.3d 980, 984 (6th Cir. 2000)(three allegations of sexual comments over six-month period insufficient to meet frequency factor); *Hale v. Village of Madison,* 493 F.Supp.2d 928 (N.D. Ohio 2007)(insufficient frequency found where during 3 year tenure as administrative assistant to Village Administrator, female employee alleged one instance of non-threatening physical contact, several occasions of Administrator leaning in as if to kiss her, and comments which "generally occurred on a monthly rather than a frequent basis," such as asking her if she was wearing thong underwear, showing her a computer image of cow with a "huge penis" mounting another cow, advising a divorced female co-worker to get a vibrator, leaning in to pretend he was going to kiss her, and saying that "someone's chewing on

11

my nuts" when someone was talking about candy on his desk, as such "conduct was not severe or pervasive when it concerned comments made on a monthly basis); *Farra v. GMC,* 163 F.Supp.2d 894, 909 (S.D. Ohio 2001)(conduct occurring approximately 16 times over 20-month period not sufficiently severe or pervasive as a matter of law); *Ellis v. Jungle Jim's Market, Inc.*, No. CA2014-12-254, 44 N.E.2d 1034, 2015 Fair Empl.Prac.Case. (BNA) 192, 685, 2015-Ohio-4226 (Ohio App. 7th Dist. Mar. 9, 2017)(genuine issues of material fact existed as to whether supervisor's conduct was sufficiently severe and pervasive as employee and co-workers testified supervisor referred to his penis daily, discussed oral sex and split tongues with employee daily, told employee that he wanted to "bend [her] over and BF" her, and stuck his tongue out at her to simulate licking).

  The Court next considers the second factor of the severity of Defendant Smith's comments and conduct. Again, the Court does not condone the comments and conduct and they were certainly juvenile, offensive and crass. However, the Sixth Circuit has held that "harassment involving an element of physical invasion is more severe than harassing comments alone." *Hawkins v. Anheuser-Busch*, 517 F.3d 321, 334 (6th Cir. 2008)(reversed granting of defendant's motion for summary judgment on hostile work environment claim under Ohio law where harasser made sexually explicit comments, such as requesting oral sex, and touched and grabbed plaintiffs, and rubbed up against one of then with his private parts.) Comparatively, in *Fry v. Wheatland Tube, LLC.*, - - -N.E.3d - - -, No. 18CA7, 2019 WL 1755686, 2019-Ohio-1453, (Ohio App. 5th Dist. Apr. 17, 2019), the Ohio appellate court found that genuine issues of material fact precluded granting summary judgment in favor of the employer on Fry's hostile work environment sexual harassment claim. The court held that genuine issues of material fact existed as to whether the shipping leader's conduct toward Fry, an employee in the shipping department, was severe or pervasive. *Id*. In finding that reasonable minds could conclude that the shipping supervisor's comments and actions were sufficiently severe or pervasive, the court cited to the following alleged comments and conduct, among others, made by the shipping supervisor toward Fry: supervisor pulled Fry's face toward his penis when Fry was bent down to band a pallet, and said that Fry was his "new bitch;" supervisor massaged Fry's shoulders;

12

supervisor put his exposed penis on Fry's lower back/buttocks when Fry was bent over a pallet and the back of his pants slipped down and asked if that was how Fry made his significant other orgasm; supervisor exposed his penis to female employees; supervisor asked Fry to go to store and pick out a dildo; supervisor grabbed Fry's breasts after he gained weight; supervisor "humped" Fry by grabbing his hips and rubbing his penis on Fry's buttocks when he was bent over a pallet; and supervisor asked Fry to look at his erect penis under his pants after supervisor put female employee's hand on his pants. *Id.* at *2-*3.

Contrarily, in *Wade v. Automation Personnel Servs. Inc.*, 612 Fed. App'x 291 (6th Cir. 2015), the Sixth Circuit affirmed the granting of summary judgment in favor of the employer, finding that the employee failed to establish a prima facie claim of hostile work environment sexual harassment after a female supervisor exposed her breasts to employee, consistently made inappropriate comments about whether employee was wearing undergarments, and called employee's breasts "big hoobie boobies."

Upon review of these cases where the courts decided as a matter of law whether the supervisors' conduct and comments complained of were severe or pervasive, the Court finds that reasonable minds in the instant case could not find that Defendant Smith's conduct and comments rise to the level of severity or pervasiveness necessary to sustain Plaintiff's hostile work environment sexual harassment claim. The only instance of a physical touching in the instant case is Plaintiff's allegation that Defendant Smith grabbed his hands once three months after telling him how soft his hands were, which Plaintiff implied meant that Defendant Smith thought that he had masturbated on them. The other complaint of conduct of repeated salicious licking of the soda cans was juvenile, crass, and offensive. As were the comments about finding Plaintiff a boyfriend or girlfriend or Plaintiff being with a girl, Plaintiff holding another employee's "weiner" or putting his "weiner" in another employee's ear, the renter "Richard" waiting for Plaintiff, and asking Plaintiff to take off his shirt or whether Plaintiff saw another official nude. When compared to the cases where the courts have found severity or pervasiveness as a matter of law, reasonable minds could not find that the incidents in this case rise to the requisite level of severity or pervasiveness.

The same can be said of the next factors in determining severity; those of the comments and conduct being physically threatening or humiliating, or a mere offensive utterance. Defendant Smith's comments went beyond mere utterances and were somewhat humiliating, but they were not physically threatening.

Accordingly, even construing all of Plaintiff's allegations in a light most favorable to him, the Court finds that while Defendant Smith's comments and conduct over Plaintiff's nearly seven years of employment, were childish, crude and offensive, they did not rise to the level of sufficiency required to establish a prima facie case of severity or pervasiveness in order to sustain Plaintiff's hostile work environment sexual harassment claim. For these reasons, the Court GRANTS summary judgment in favor of Defendant Smith (ECF Dkt. #19) and DISMISSES Plaintiff's hostile work environment sexual harassment claim against him with prejudice.

Since the Court finds that Plaintiff cannot establish a prima facie case of hostile work environment sexual harassment against Defendant Smith in Count 1 of his complaint, the Court further GRANTS summary judgment in favor of Defendants on Count 2. ECF Dkt. #19. To the extent that Plaintiff presents a claim against Defendant Smith in his official capacity, such official capacity claims are construed as claims against Defendant Trumbull as the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). Since the Court holds that Plaintiff cannot sustain a claim of hostile work environment sexual harassment against Defendant Smith, claims against him in his official capacity and thus against Defendant Trumbull in Count 2 of Plaintiff's complaint for employer liability for Defendant Smith's conduct are DISMISSED with prejudice.

### **B.** **FIRST AMENDMENT RIGHTS**

Defendants also move for summary judgment on the last count of Plaintiff's complaint in which he alleges that they violated his First Amendment rights to freedom of speech and freedom of association. ECF Dkt. #19. Plaintiff alleges that Defendant Smith violated these First Amendment rights when Defendant Smith threatened him "with job related reprisals" for running for political office against Defendant Smith's wife, for not voting the way that Defendant Smith wanted him to, and for attending political functions of officeholders with whom Defendant Smith

14

was upset. ECF Dkt. #1-1 at 6. Plaintiff clarifies in his response to the summary judgment motion that the job-related reprisal about which he complains in this Count has nothing to do with resigning his employment. ECF Dkt. #22 at 27. Rather, he alleges that Defendant Smith threatened to change his employment classification status from a fiduciary employee to a classified employee which would prohibit him from engaging in political activities. *Id*. at 28-30. Plaintiff asserts that "[p]olitical activity is an important part" of his life and taking away his right to exercise this right is not de minimus or inconsequential and "would chill the ardor of persons similarly situated to him to participate in the political process." *Id*. at 30.

The First Amendment protects against claims of retaliation based on protected speech ("protected-speech retaliation") and political affiliation ("political-affiliation retaliation"). *Dye v. Office of the Racing Comm'n*., 702 F.3d 286, 294 (6th Cir. 2012). In order to succeed on a First Amendment retaliation claim, Plaintiff must present a prima facie case of retaliation by showing: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by his protected conduct." *Id.*, quoting *Scarbrough v. Morgan Cnty. Bd. of Educ*., 470 F.3d 250, 255 (6th Cir. 2006). If a plaintiff establishes a prima facie case, the burden then shifts to the employer to show "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Benison v. Ross,* 765 F.3d 649, 658 (6th Cir. 2014), quoting *Dye*, 702 F.3d at 294 (*quoting Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir.2010)) (internal quotation marks omitted). After this burden shift, the Court should grant summary judgment if, "in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Benison,* 765 F.3d at 658, quoting *Dye*, 702 F.3d at 294-295.

In their motion for summary judgment in the instant case, Defendants contend that Plaintiff cannot establish that he suffered an adverse employment action or that it was Defendant Smith who threatened the adverse action of a job classification modification. ECF Dkt. #23 at 10-11. The Court agrees.

15

An adverse employment action in the context of a First Amendment retaliation claim is one that "would chill or silence a person of ordinary firmness from future First Amendment activities." *Ctr. For Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir.2007) (internal quotation marks omitted); *see also Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). This standard is "distinct" from the adverse action standard used in traditional employment discrimination claims, and therefore this Court must "tailor [its] analysis under the adverse action prong to the circumstances of this specific retaliation claim." *Dye*, 702 F.3d at 303–04 (internal quotation marks omitted).

Plaintiff first contends that Defendant Smith told him not to attend political functions of two officials with whom Defendant Smith was upset. ECF Dkt. #1-1; ECF Dkt. #15-1 at 144. ECF Dkt. #22 at 29. However, Plaintiff admitted at his deposition that he nevertheless attended those functions. ECF Dkt. #15-1 at 144. If Plaintiff himself was not deterred or "chilled" from attending the political functions based upon Defendant Smith's direct comments, the Court finds it unlikely that Plaintiff could show that Defendant Smith's comments constituted an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct.

Plaintiff also asserts that Defendant Smith put his arm around him, smacked him on the back three times, had him sit down, and told Plaintiff that when Plaintiff was in the voting booth thinking about voting for one candidate, Defendant Smith would be thinking about Plaintiff voting for the candidate that he wanted. ECF Dkt. #15-1. The Court finds that this also does not rise to the level of an adverse employment action because Plaintiff cannot show that some consequence or potential consequence was threatened if he did not vote as Defendant Smith indicated.

Finally, Plaintiff contends that when he ran for a precinct position against Defendant Smith's wife, Defendant Smith threatened to change Plaintiff's job classification to a classification that would bar him from participating in partisan politics. ECF Dkt. #22 at 29-30. However, as Defendants point out, Plaintiff testified in his deposition that it was not Defendant

16

Smith, but Attorney Matt Blair, who approached him "and asked me about changing my position." ECF Dkt. #15-1 at 156. When Plaintiff was asked about the evidence that he had that Defendant Smith and Attorney Blair wanted him to change job classifications in order to bar him from running against Defendant Smith's wife, Plaintiff testified that, "They wanted me to change. They asked me." *Id*. at 156-157. He explained that "Matt approached me and said, 'You will be protected if you change classifications.' That was basically the bottom line there. And then, on - - let's see - -" *Id*. at 157. When asked if Attorney Blair mentioned Defendant Smith's wife when he approached Plaintiff, Plaintiff testified, "No." *Id*. When Plaintiff was asked if Defendant Smith ever talked to Plaintiff "about his wife in the context of switching from an unclassified" to a classified employee, Plaintiff testified, "No, not about that. He talked about her another time." *Id*. Moreover, Plaintiff testified that he quit the job before any change could be made. *Id*. at 159. Plaintiff also confirmed that his resignation of employment was not due to any First Amendment violations. *Id*. Thus, Plaintiff presents no genuine issue of material fact concerning Defendant Smith making comments about changing his job classification because Plaintiff was running for office against Defendant Smith's wife. Further, Plaintiff fails to show that changing his job classification was threatened as he testified that Attorney Blair "asked" him about changing his job classification, and said that the job classification would be to protect him. Finally, Plaintiff acknowledges that the job classification did not occur because he resigned his position for the inappropriate comments before any further discussion or action occurred.

Accordingly, and construing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff fails to show that he suffered an adverse employment action sufficiently adverse to chill or silence a reasonable person from engaging in future First Amendment activities.

For these reasons, the Court GRANTS Defendant Smith's motion for summary judgment as to Plaintiff's First Amendment claims. ECF Dkt. #19. Since the Court has found that Plaintiff cannot sustain his First Amendment claim against Defendant Smith, the claim against Defendant Trumbull for employer liability as to Defendant Smith also fails as well. The Court thus GRANTS summary judgment in favor of Defendant Trumbull and dismisses Plaintiff's First

Amendment claims against Defendant Trumbull as well.  ECF Dkt. #19.

## IV. CONCLUSION

For the above reasons, the Court GRANTS Defendants' motion for summary judgment (ECF Dkt. #19) and DISMISSES WITH PREJUDICE Plaintiff's complaint in its entirety against Defendants.

IT IS SO ORDERED.

Dated: December 27, 2019                     */s/George J. Limbert*
                                                                  GEORGE J. LIMBERT
                                                                  UNITED STATES MAGISTRATE JUDGE